†NEW YORK, LAKE ERIE & WESTERN R. R. CO. v. HENRY SIEGFRIED.

1. DISMISSAL OF ACTION DOES NOT EXTEND PERIOD OF.

The dismissal of an action without prejudice to a future action, does not extend the period of limitation prescribed as to such action.

2. VOLUNTARY DISMISSAL NOT A FAILURE OTHERWISE THAN ON MERITS.

A voluntary dismissal of an action by the plaintiff, not produced by any adverse ruling of the court, or compulsion of any kind, is not a failure otherwise than upon the merits, within the meaning of section 4991, Rev. Stat.; and if the time limited for the commencement of such action has expired, the plaintiff cannot commence a new action within one year after such dismissal, as provided for in such section.

Error to the Court of Common Pleas of Mahoning county.

LAUBIE, J.

This is a proceeding in error to reverse a judgment rendered in a case wherein Henry Siegfried was plaintiff, and the railroad company was defendant brought to recover for personal injuries received by him while in the service of the company, on its road.

The injury was received in February, 1886, and this action was not brought until 1891, and was, therefore, barred by the statute of limitations, unless saved by some exception thereto.

To remove this bar, it was alleged in the petition that a prior action had been commenced in January, 1890, in the same court, against the defendant, on the same cause of action; that issue had been made up, and the case subsequently removed to the circuit court of the United States for the Northern District of Ohio; that it had remained a pending action in that court until May, 1891, when it was dismissed without prejudice by order of that court, and this action commenced within one year thereafter.

Issue was taken by the answer of the defendant on these allegations, and the bar of the statute pleaded; and upon that issue it does not appear that the plaintiff introduced any evidence. There is a certified copy of a journal entry in the federal court found in that part of the bill of exceptions containing the evidence for the plaintiff, but it is not stated in the bill that it was offered in evidence, and which bill contains all the evidence offered on either side. Subsequently, during the trial, the defendant introduced a properly certified copy of an order of the federal court dismissing the action, which is as follows:

"This day came on to be heard the defendant's motion to have the entry of dismissal entered in this case at the present term of this court, to-wit: On May 14, 1891, corrected so as to correspond with the facts in the case. And it appearing to the court that on the da' above named, counsel for the plaintiff directed the clerk to request the court to dismiss said cause without prejudice, and prepared the form of order that day entered; and the court desiring to have the record show the facts, it is now ordered that said journal entry be modified so as to read as follows: This cause is dismissed, on motion of the plaintiff, without prejudice to another action, and at his costs; and it is ordered that the defendant have and recover from the plaintiff its costs in this behalf incurred, taxed at the sum of $———, for which execution may issue."

This being the entry of record dismissing the action, and showing that it was done at the voluntary request of the plaintiff, and having been done after the expiration of four years from the date of the injury to plaintiff, did the plaintiff "fail otherwise than upon the merits," so as to entitle him to bring another action within one year thereafter, according to the provisions of sec. 4991, Rev. Stat.?

†This judgment was affirmed by the supreme court; see opinion, 50 O. S., 294.

The fact that the dismissal was without prejudice would not have the effect to save the action as against the bar of the statute of limitations. Whatever effect it might have as enabling the plaintiff to sue again as against a plea of *res adjudicata,* it could not operate so as to extend the time of the limitation of suit. Archer v. Ry. Co., 65 Ia., 611.

Stripping the case, therefore, of that proposition, the question presented must be determined upon the construction to be given to sec. 4991, Rev. Stat., which is as follows:—

"Section 4991. If in an action commenced in due time a judgment for the plaintiff be reversed, or the plaintiff fail otherwise than upon the merits, and the time limited for the commencement of such action, has, at the date of such reversal or failure, expired, the plaintiff, or if he die and the cause of action survive, his representatives may commence a new action within one year after such date; and this provision shall apply to any claim asserted in any pleading by a defendant."

The cases to which our attention has been called in the supreme court of this state are not of the character here presented, and we have no direct decision of the question in our reported cases. In Bates v. Ry. Co., 12 O. S., 620, the dismissal is stated to have been by the court; and in Meisse v. McCoy, 17 O. S., 225, the dismissal was by the court, on motion of the defendant. In Haymaker v. Haymaker, 4 O. S., 272, the question was made by counsel, but not decided—the court holding it to be not a case of voluntary non-suit. There the action was dismissed on motion of the defendant, because the plaintiff had not complied with the order of the court to give surety for costs. The court said:

"It is very clear that the legislature intended by our general statute of limitations, that the plaintiff should not lose his debt if he commenced his action before the bar was complete, and afterwards, and after the statute had run, he should be non-suited by order of the court. but should have one year thereafter in which to commence a new action. * * * The question whether this was a voluntary non-suit, and whether the statute can be so extended as to include voluntary non-suit, does not arise in this case, for the reason that so far as we can see it was anything but a voluntary non-suit; it was made on the motion of the defendant, and was ordered by the court. The fact that it was ordered because the plaintiff had not complied with the statute in giving security for costs, is no more the fault of the plaintiff than any other error which he or his counsel might have committed on the trial of the case, by which the judgment might be arrested or reversed."

That decision was under sec. 6 of the act of February 19, 1831, Swan's Statutes, 555, as follows:

"Section VI. That if in any action commenced within the time limited by this act, judgment shall be arrested or reversed, or the suit abate, or the plaintiff become non-suited, and the time limited as aforesaid shall have expired, the plaintiff may commence a new action within one year after such arrest or reversal, non-suit, or abatement of action as aforesaid, and not after."

That act continued in force until the adoption of the code. Since that time our statutes have provided that judgments must be upon the merits, and non-suits being no longer known, at least by that name, the statute in question was changed to its present reading.

A statute authorizing appeals from non-suits, was held not to apply to a voluntary non-suit.

In Reed v. Carpenter, 2 O., 79, Hitchcock, J., (page 87), says:

"The legislature, on the 4th of February, 1813, enacted a statute providing in substance, that when a non-suit was ordered by the court of common pleas, in consequence of a defect of testimony, or for any other cause, the plaintiff should have the right of appeal. From this statute ro other inference, with respect to the intention of the legislature, than this, can be drawn, that when the non-suit is voluntary, the plaintiff should not have this right; and from that period to the present, such has been the uniform decision of the court." See also Bradly v. Sneath, 6 O., 490, 496.

Recurring now to the language of the statute in question here, in what sense are the words "if the plaintiff fail otherwise than upon the merits" used therein?

The verb "fail" as here used, evidently means, be unsuccessful or defeated. The context makes this too plain for doubt, and the sense is therefore the same as if the statute read, "if the plaintiff be defeated otherwise than upon the merits;" and the inference is that the failure, or defeat, is the result of some force or action upon the part of the opposite party, or the court, or both. It implies involuntary, not voluntary, action upon the part of the defeated party, produced by compulsion —a legal compulsion—which he could not or did not resist. Certainly, if "fail" is used in the sense of defeat, it means to be overthrown, to be vanquished, as of an attack, or a repulse; and, therefore, carries with it the implication of a contest or struggle with an opposing force or power sufficient in strength or weight to overcome the resistance of the defeated party.

To fail upon the merits would, beyond question, mean a defeat upon full trial, and to fail otherwise than upon the merits, just as clearly means a defeat upon some trial, or contest, short of one upon the merits; and, in either case, indicates a result produced by a force or power outside of and against the will of the party that fails. How can one be said to fail, who makes no effort to succeed—who withdraws his cause when no one is pushing him, or asking present action against him?

In Wood v. Carpenter, 101 U. S. 139, Justice Swayne said:

"Statutes of limitation are vital to the welfare of society, and are favored in law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity, and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay extending to the limit prescribed, is itself a conclusive bar. The bane and the antidote go together."

A party should not, therefore, be permitted by a latitudinarian construction to defeat the operation of so salutary a law—to extend the period of limitation in his own favor, by his own voluntary, and apparently unneccessary, act. Nothing short of absolute necessity, from stress of language, should cause a court to impute to the legislature an intent to confer such an extraordinary privilege, or sanction such a construction.

Although the section in question may be remedial in its nature, and to be liberally construed, there is nothing in its letter or spirit to indicate that a plaintiff who discontinues his action without apparent necessity or compulsion, by reason of any adverse decision or otherwise, should be entitled to its benefits.

We know of no principle of law that will authorize a court to assume, in the entire absence of allegation or evidence, that the discontinuance was the result of stress of circumstances, or compulsion; nor do we conceive it to be either just or equitable to allow a party to extend the period of limitation in his own favor, by his mere whim or caprice. In the absence of statutory provision, the rule has been always that the mere bringing of a suit within the statutory period, and voluntarily discontinuing it, does not interrupt the running of the statute; and if the legislature intended in this instance to remedy that evil, if it is an evil, it is no stretch of imagination to say, that it would have been done in plain and appropriate language, as has been done in Georgia, and perhaps in other states. The Georgia statute provides that, "if the plaintiff be non-suited, or shall discontinue, or dismiss his cause," he may commence and maintain a new suit within six months thereafter.

But little aid can be derived from cases in other states of the Union upon this question, because of dissimilarity of language in the statutes; but some of the more important ones may require notice.

The precise question here made—the effect of a voluntary discontinuance of an action,—has rarely been presented to the courts, and is comparatively a new question.

In Missouri and Arkansas the statutes are alike, in that they provide if the plaintiff shall "suffer a non-suit," he may commence a new action, etc.; and these words have been construed by the courts of those states.

In Shaw v. Pershing, 57 Mo. 416, (followed 63 Mo. 492; 75 Mo. 378), it was held that "such a non-suit may be voluntary, and need not be brought about by an adverse ruling of the court."

While the language of the Missouri statute presents more reasons or grounds for such an interpretation than our own, it will be noticed, in examining the opinion of the Missouri court, that there was no attempt to analyze the language of the statute, and the court confined itself to a simple declaration of the law, as they viewed it.

In Walker v. Peay, 22 Ark. 103, the court held that a voluntary non-suit or dismissal was within the exception of the statute, the same as a formal non-suit, basing the decision principally upon language used in the opinion of the court in State Bank v. Magness, 6 Eng. (Ark.) 344, and Coffin v. Cottle, 16 Pick., 386.

The case of State Bank v. Magness, *supra*, presented a question of voluntary non-suit only in the sense that the plaintiff allowed the non-suit to be entered in preference to giving bond for costs, as ordered by the court, on motion of the defendant, and the language of the court in the opinion, (relied upon in the case of Walker v. Peay, *supra*), had reference solely to such a voluntary non-suit. In the other case relied upon, Coffin v. Cottle, *supra*, the question was whether, where *scire facias* was brought upon a judgment, and a plea of the invalidity of such judgment was held to be a bar, such action of the court was not in legal effect the same as a reversal on error, and it was held that it was, and therefore brought the case within the saving clause, that if the judgment be reversed on error, plaintiff may bring a new action, etc.

While the court in Coffin v. Cottle, *supra*, and in the case that followed it, Woods v. Houghton, 1 Gray, 580, substantially engrafted upon the statute another exception, under the guise of following the spirit of the statute, yet beyond this idea of giving the statute an equitable construction, there is nothing in the case to justify the holding in the Arkansas case. This is apparent in the remarks of Shaw, C. J., in the opinion, where he says that the words of the statute were meant to declare that "where the plaintiff has been defeated by some matter not affecting the merits, some defect or informality, which he can remedy or avoid by a new process, the statutes shall not prevent him from so doing, provided he follows it promptly by a suit within a year."

What was the particular form of dismissal in Walker v. Peay, does not clearly appear; it is referred to by the court as having been a voluntary dismissal, and, also, that "plaintiff took a non-suit;" but it reasonably appears that the court was in some way informed, or assumed, that the action at law—the prior action— had been dismissed because the plaintiff had found that he had mistaken his remedy; and it may be doubted whether it presented a case of pure, voluntary discontinuance.

In Vermont, while the courts seem to have adopted the same liberality of construction as to the statute of that state, that the Massachusetts courts did to theirs, and held that it applied to a non-suit, they declared it did not apply to a voluntary non-suit. The statute of that state provided that "where an action shall fail by reversal on writ of error, motion in arrest of judgment, plea in abatement, or on demurrer," and "the merits of the cause shall not be tried," the plaintiff may commence another action within one year thereafter.

In Phelps v. Wood, 9 Vt. 399, the court held that the "exception was intended to reach all those cases where a suit was brought, and the merits of the action failed to be tried, without the fault of the plaintiff," but that (p 404,) "if the plain-

tiffs had discontinued their own suit, or voluntarily became non-suited therein, it is evident they could not rely upon that suit to prevent the operation of the statute of limitations."

In Spears v. Newall, 13 Vt., 288, it was held (p. 295), that this statute applied to a non-suit, "provided it was not voluntary, but constrained by some decision of the court."

Other courts of high repute have refused to add to similar statutes exceptions not specifically named, or to extend the benefit of an exception to a plaintiff who by his own act caused or permitted the prior suit to fail.

The New York statute (code sec. 405,) provides, that when "the action is terminated in any other manner than by a voluntary discontinuance or dismissal of the complaint for neglect to prosecute the action, or a final judgment on the merits," the plaintiff may commence a new action, etc.

In Morange v. Meigs, 54 N. Y., 208, under this section, it was held that a dismissal of the prior suit, on a refusal of the plaintiff to go on with the trial, after failing to obtain a continuance, was not within the exception, and did not save the second action from the bar of the statute.

And in Hayward v. Ry. Co., 50 Hun., 383, it was held that a dismissal of the prior suit for failure to pay costs awarded against the plaintiff, was a voluntary dismissal or failure to prosecute, and not within the exception, notwithstanding plaintiff was financially unable to pay.

In Indiana, R. S. 1852, p. 77, sec. 218, provided, that if "the plaintiff fail therein from any cause except negligence in the prosecution, or the action abate, or be defeated by the death of a party, * * * a new action may be commenced within five years," etc., and in Null v. W. W. V. C. Co., 4 Ind. 431, it was declared that "a proceeding properly instituted for the recovery of a claim, but voluntarily abandoned, cannot be made available, in an action subsequently brought, to save the claim from the bar of the statute of limitations."

The Rhode Island statute provides, that if "an action duly commenced shall be abated, or otherwise avoided, or defeated, by the death of any party thereto, or for any matter," plaintiff may commence a new action, etc.

In construing this act, in Robinson v. Transp. Co., 16 R. S., 637, it was held: that a dismissal for failure to give surety for costs, as ordered by the court, was not within the exception, and it was said:

"The language of section 8 is very broad, but we do not think it can be held to apply in favor of a plaintiff who abandons his action for no other cause than his own will or choice. The words 'abated,' 'avoided,' 'defeated,' point to some cause or condition external to the plaintiff, operating adversely against him, and are not such words as would naturally be used to designate a voluntary abandonment."

And the court further held that to make it an involuntary failure, and without fault on his part, "the plaintiff should have shown his inability to comply with the order."

The Iowa statute (code, sec. 2537) is perhaps nearer in language to our own statute than any cited, except Indiana, and is as follows:

"If after the commencement of an action, the plaintiff fail therein for any cause except negligence in its prosecution, and a new suit be brought within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first."

In construing this statute, in Archer v. Ry. Co., *supra*, the syllabus is:

"When plaintiff began an action for personal injury in the state court, which defendant had removed to the federal court, and the plaintiff then had it dismissed without prejudice, on the ground that he believed he could not obtain a fair trial in the federal court, held, that a new action for the same cause, began more than two years after the cause of action accrued, but less than six months after the first action was dismissed, was barred by sec. 2529, of the code, and that sec. 2537 did not save it."

In the opinion of the case it is said:

"This action was commenced on December 22, 1883, and in addition to a statement of the grounds upon which the plaintiff claimed he was entitled to recover, it was stated in the petition that the dismissal of the action in the federal court was not because of any negligence on the part of the plaintiff, but because he did not believe that he would ever be able to obtain justice and a fair trial to an honest and unbiased jury in said federal court. * * * The cause of action stated in the petition was barred in two years after it accrued, (code sec. 2529), unless saved by sec. 2537, of the code * * *. It will be observed the statute provides, that if the plaintiff fails in the action, another may be brought. Is the voluntary dismissal of the action such a failure as is contemplated by the statute? A voluntary dismissal under compulsion may be. * * * But suppose the plaintiff voluntarily dismisses the action for any reason, but not under any compulsion whatever, can it be said that he has failed in the action? How can it be said that he has failed, until he has made at least some effort to prepare and try his action?"

For other instances, see Marble v. Hinds, 67 Maine, 203; Spier v. McQueen, 1 Mann. (Mich.) 252. See also Wood on Lim. sections 293, 296, and notes.

Our own courts have not followed the lead of the Massachusetts courts, and have refused to add exceptions to the statute, under the plea of an equitable or liberal construction.

"It is well known that courts have formerly made great progress by multiplying exceptions from the enactments, towards a total repeal of statutes of limitations; but lattely the course of decisions is more in conformity with the obvious meaning of such laws. We think such statutes should be enforced like every other legislative act, according to the intention of the law makers as expressed in the act itself."
Williams' Admr's v. Williams, Adm'r, 5 O., 444, 445.

Courts of law cannot introduce an exception to the statute which the legislature has not authorized. Fee, Adm'r v. Fee, 10 O., 474; Howk v. Minnick, 19 O. S., 462; Delaplane v. Smith, 38 O. S., 413; Douglas v. Corry, 46 O. S., 349.

In the last case the court held that a "continuing and subsisting trust," specified in the statute of limitations, meant a "technical" trust, such as was cognizable in courts of equity only, and did not include trusts arising from mere fiduciary relation, viz: attorney and client; thus giving to the words of the statute a technical meaning contrary to the rule laid down in Coffin v. Cottle, *supra*.

For the reasons herein given, the judgment below must be reversed; and as it is apparent that the plaintiff cannot remedy the matter on re-trial, this court proceeding to render the judgment the court below should have rendered, order that the action of the plaintiff below be dismissed, and at his costs.

Hine & Clark, for plaintiff.

Geo. F. Arrel and F. Jacobs, for defendant.

---

## PUBLIC CONTRACTS.

44

[Montgomery Circuit Court, December Term, 1892.]

Shearer, Stewart and Shauck, JJ.

† CHARLES E. PEASE v. EDWARD RYAN ET AL.

1. SPECIAL ACT NOT TO CONTROL GENERAL, NOR LATER AN EARLIER ONE, UNLESS IRRECONCILABLE.

To the application of the canons of statutory interpretation that a special will control a general act, and that a later will control an earlier act, it is indispensable that there be irreconcilable conflict between the provisions of the special and general, or those of the earlier and later acts.

2. PROPOSALS MUST FOLLOW SPECIFICATIONS

Under a statute which requires a board of public officers to make plans and specifications for improvements under their charge, to advertise for proposals for making the same, and to contract with the lowest responsible bidder, it is not competent for them to award the contract to one whose proposal is for materials not mentioned in the specifications and advertisement, as such proposal is not competitive; and the per-

---

†This case in the supreme court was dismissed for failure to file a printed record, October 3, 1893.